UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:07-CR-12 |
| | ) | |
| WILLIE A. FREEMAN | ) | |
| MARION RUSSELL | ) | |

REPORT AND RECOMMENDATION

The defendants are charged with possessing fifty grams or more of crack cocaine with the intent to distribute, with possessing cocaine with the intent to distribute, and with possessing Ecstasy with the intent to distribute. These drugs were found in the vehicle in which these defendants were riding on January 17, 2007 after a traffic stop by a Tennessee State Trooper. The defendants have filed motions to suppress[1] any evidence of the drugs and money that were found in the vehicle on the basis that they were detained longer than the time reasonably required for the issuance of a traffic citation.

These motions have been referred to the Magistrate Judge pursuant to 28 U.S.C. 636 and the standing order of this Court. An evidentiary hearing was held on September 5, 2007.

On January 17, 2007, Trooper Joe Lunceford of the Tennessee Highway Patrol was parked alongside the eastbound lanes of Interstate 26 in Unicoi County, Tennessee, operating his radar unit. Lunceford clocked the vehicle in which these defendants were riding at 74 mph in a 55 mph zone. Lunceford activated his blue lights and pulled out onto the highway behind the defendants. The defendants stopped. their vehicle.

---

[1] Docs. 35 and 39

It is important to note at this point that almost everything that transpired from the moment Lunceford pulled behind the defendants' car is on videotape, and relatively high-quality videotape at that. Not only is the video of good quality, so is the audio.

Trooper Lunceford observed two men, both black, in the car. As Lunceford approached the car, both occupants put their hands in the air, a rather unusual reaction for individuals who presumably believed they were stopped only for a traffic offense.

Trooper Lunceford was very cordial, even to the point of bantering with the two occupants of the vehicle. Laughing, he told them to put their hands down, and asked the driver, Mr. Freeman, for his drivers license and registration information regarding the car. As it developed, the car was rented. He walked back to his car to advise his dispatcher of the car tag number and drivers license number.

Lunceford emphatically testified at the suppression hearing that he smelled the strong odor of marijuana when he walked up to the driver's side of the car. *The resolution of the defendants' motions to suppress depends upon whether Lunceford is believed, i.e., whether he did or did not smell the odor of marijuana when he first walked up to the car.*

According to the chronometer on the videotape, the traffic stop commenced at 2:46 p.m. At 2:47, Lunceford attempted to call his dispatcher in Fall Branch to obtain information about the tag number on the vehicle. The tape reflects that Lunceford persistently had difficulty communicating with his dispatcher in Fall Branch due to the mountainous terrain in which this traffic stop occurred.

At 2:48, Lunceford called the Unicoi County Sheriff's Department and requested that a K-9 officer be sent to his location. The Unicoi K-9 officer, as well as other backup officers, promptly indicated that they were en route to Lunceford's location.

At 2:53, the Unicoi County Sheriff's Department (not the Fall Branch Highway Patrol Office) advised Lunceford that Mr. Freeman's drivers license was valid. At 2:55, Lunceford is told that they were no outstanding warrants for Mr. Freeman.

Sometime between 2:55 and 2:58, Unicoi County Sheriff's deputies, including the K-9 officer, had arrived. Trooper Lunceford can be heard on the audio portion of the tape talking to one of those officers, saying that the defendants were "really nervous" (referring to defendants raising their hands), with "things not matching up" (the names on the rental agreement), as well as mentioning the tragic murder of a highway officer in West Tennessee the week before during a traffic stop. During this conversation, Lunceford says nothing about having smelled marijuana when he first approached the car. He also says, "they might be totally legit, who knows?"

At 3:00, the defendants are told to get out of the car, and they are patted down.

At 3:02, Lunceford mentions something about the odor of marijuana.

At 3:09, the drug dog is walked around the car to sniff it, and he gave a positive alert.

At 3:18, the dog was allowed to enter the car for an interior sniff. The dog alerted on the roof of the car at the rear. A search by the K-9 officer after that positive alert revealed that the head-liner was loose. When the officer pulled at it, bags of drugs fell onto his face. The drugs in the head-liner of the car were found at 3:35 p.m.

In addition to the drugs, the officer discovered something in excess of $1,000.00 in the center console of the car. Officer Lunceford testified that the currency was found over the car visor on the driver's side, whereas the K-9 officer testified that is was found in the console. This discrepancy is of no particular consequence, inasmuch as it was not Lunceford who actually conducted the search of the vehicle interior. Put simply, Lunceford was mistaken, and nothing

more.

At 3:40, Lunceford is heard to refer to the odor of marijuana. Again, at 3:43, he said, " I knew I smelled something." At 4:20, Lunceford makes a reference to having smelled something really strong.

At 4:24, he says, " the rental agreement was what really got me."

Defendants do not contest the lawfulness of the initial stop of their car. In other words, they do not contest that were going 74 mph in a 55 mph zone. Rather, they contend that they were detained far longer than necessary to effectuate the purposes of that traffic stop, and on that basis seek to suppress all evidence revealed by the search of their car.

> "We have held that [a]n ordinary traffic stop... is more akin to an investigative detention rather than a custodial arrest, and the principles announced in *Terry v. Ohio,* 392 US 1, 88 Supreme Court 1868, 20 L.Ed 2d 889 (1968), apply to define the scope of reasonable police conduct." [Citation omitted] Thus, " any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." [Citation omitted] Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or occupants unless something happened *during the stop* to cause the officer to have " reasonably and articulable suspicion that criminal activity [is] afoot [Citation omitted]."

*U.S. v. Davis*, 430 F3d 345, 353 (6th Cir. 2005).

By way of emphasis, if during the course of the traffic stop something occurs that generates reasonable suspicion that another crime has been committed, further detention is permissible. *U.S. v. Mesa*, 62 F3d. 159, 162, (6th Cir. 1995).

Detecting an odor of marijuana emanating from inside the car undoubtedly would be a circumstance warranting addtional investigation and therefor detention. As already noted, defendants' suppression motions rise or fall upon whether Trooper Lunceford did or did not detect the odor of marijuana when he first approached their car. He unequivocally and

emphatically testified under oath before this Court that he did detect the odor of marijuana. There are portions of the tape that suggest that he did not smell marijuana; at various times, he mentioned certain things that caused him to be suspicious of the defendants, and he notably did not mention an odor of marijuana. For example, at 2:58, he talked about the defendants acting nervously, and the peculiarities of the rental agreement, yet he said nothing about smelling marijuana. At 4:24, as events were drawing to a close, Lunceford said that it was the rental agreement that really seized his attention. But on the other hand, he does make sporadic references to having smelled marijuana, and the fact that he requested a K-9 officer almost immediately after the stop tends to corroborate his testimony.

At 2:58, Lunceford said, "they might be totally legit," which arguably suggests he had not smelled marijuana. But at that point all he knew was that he had *smelled* marijuana. If things had never progressed beyond the mere odor, these defendants would have been sent on their way. But the strong odor of marijuana warranted further investigation, and that further investigation consisted of a K-9 officer and a dog sniff, ultimately leading to the discovery of a cache of drugs in the head liner of the car and over a $1,000 in currency. The K-9 officer found a marijuana "roach" in a fruit juice bottle in the car, and turned it over to Trooper Lunceford, confirming that one or both of the defendants had smoked a joint in the car.

Lieutenant Pauley of the Unicoi County Sheriff's Department, one of the backup officers who came to the scene, testified that he did not smell marijuana when he walked up to the car. But Lieutenant Pauley also testified that he walked up to the car only after they search had been concluded and the car doors had been open for some period of time.

Ultimately, the issue is rather straightforward: is Lunceford to be believed, or is he not? The only evidence is Lunceford's testimony and the videotape. Recalling that the standard of

proof is a preponderance of the evidence, it preponderates in favor of Lunceford. In short, Lunceford is believed. It follows therefore that the lapse of twenty-three minutes from the traffic stop to the first sniff of the drug dog, and then the lapse of an additional twenty-six minutes for the discovery of the illegal drugs, was not unreasonable under the Fourth Amendment.

It is therefore recommended that the defendants motions to suppress [Docs. 35 and 39] be DENIED.[2]

Respectfully Submitted:

  s/ Dennis H. Inman  
DENNIS H. INMAN  
UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).