UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| | ) | |
| v. | ) | No: 2:07-CR-12 |
| | ) | No: 2:12-CV-03 |
| WILLIE A. FREEMAN, | ) | |
| Petitioner. | ) | |

MEMORANDUM OPINION

This matter is before the Court on the Motion To Vacate, Set Aside Or Correct Sentence Pursuant to 28 U.S.C § 2255 filed by Willie A. Freeman ("petitioner" or "Freeman"), [Doc. 141].[1] The United States has responded in opposition, [Doc. 153], and the petitioner has replied, [Doc. 154]. Also pending before the Court is petitioner's motion for an expedited evidentiary hearing, [Doc. 156]. The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore no evidentiary hearing is necessary. For this reason, the motion for an expedited evidentiary hearing is DENIED. For the reasons which follow, the petitioner's § 2255 motion lacks merit and the motion will be DENIED.

I.  **Procedural and Factual Background**

Freeman was indicted, along with co-defendant Marion Russell, on February 13, 2007, [Doc. 1]. The three count indictment charged Freeman and Russell with possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and

---

[1] All references are to docket entries in case No. 2:07-CR-12.

(b)(1)(A) (Count 1), with possession with the intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2), and with possession with the intent to distribute 369 dosage units of MDMA in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3). *Id*. On April 19, 2007, the United States filed an information to establish prior conviction pursuant to U.S.C. § 851(a)(1) in which it gave notice of the government's intention to seek increased punishment by reason of Freeman's November 27, 1997 conviction in the Criminal/Circuit Court of Washington County, Tennessee, of the felony offense of sale of schedule II drugs, [Doc. 19]. After fairly extensive pretrial filings, the case proceeded to a jury trial on February 6-8, 2008. [*See* Docs. 73, 74, 75]. At the conclusion of the three day jury trial, Freeman and Russell were convicted on Count 3 of the indictment and of lesser included offenses charged in Counts 1 and 2. [*See* Doc. 78].

Because of the defendant's prior drug felony, he faced a mandatory minimum term of ten years to a maximum term of life as to Count 1, a maximum of two years as to Count 2, and a maximum term of 30 years as to Count 3. The presentence report prepared by United States Probation established the advisory guideline range to be 135 to 188 months. On May 5, 2008, Freeman was sentenced to concurrent terms of imprisonment of 120 months as to Counts 1 and 3 and 24 months as to Count 2. [*See* Doc. 90]. Judgment was entered in the case on May 15, 2008, [Doc. 91]. A direct appeal was taken to the United States Court of Appeals for the Sixth Circuit, [Doc. 93], and the Sixth Circuit vacated Freeman's conviction and remanded the case to the district court for a new trial by order entered October 19, 2010, [Doc. 108].

On December 31, 2009, Freeman filed a *pro se* motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c), based on the retroactive amendment to the United States Sentencing Guidelines which lowered the offense levels for crack cocaine offenses, [Doc. 107]. While the

*pro se* motion was pending, and while Freeman was before the Court awaiting a retrial pursuant to the remand from the Sixth Circuit, Freeman entered into a plea agreement with the United States pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). [Doc. 120, 126]. Pursuant to the provisions of the plea agreement, Freeman entered guilty pleas on January 24, 2011, to charges of aiding and abetting possession with intent to distribute cocaine base, a lesser included offense charged in Count 1, and to the lesser included offenses of which he had previously been found guilty as to Counts 2 and 3. [*See* Doc. 125]. On the same day, he was sentenced, pursuant to his plea agreement, to a 108 month term of imprisonment as to Counts 1 and 3 and a 24 month term of imprisonment as to Count 2, with those sentences to run concurrent to each other. Judgment was entered on February 4, 2011, [Doc. 127]. No direct appeal was taken from the Court's February 4, 2011 judgment.

Then, on September 2, 2011, Freeman filed another *pro se* motion to reduce sentence, [Doc. 129], and an expedited motion to reduce sentence pursuant to 18 U.S.C. § 3582(c) was filed by counsel on Freeman's behalf on November 15, 2011, [Doc. 133]. The United States responded to the motions to reduce sentence on November 18, 2011, [Doc. 136], and an order was entered by the Court on November 21, 2011 denying the motions to reduce sentence. [Doc. 137]. Freeman's notice of appeal was filed on December 8, 2011, [Doc. 140], and the Sixth Circuit affirmed the Court's order denying the motions to reduce sentence on October 19, 2012, [Doc. 147]. Freeman's motion to vacate under 28 U.S.C. § 2255 was timely filed on January 3, 2012, [Doc. 141].

Freeman's plea agreement contained the following stipulation of facts:

> 3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily

3

> constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.
>
>> a) Through the testimony of several witnesses the United States would demonstrate, beyond a reasonable doubt, that on or about January 17, 2007, within the Eastern District of Tennessee, the defendant, aided and abetted by Marion Russell, did knowingly and intentionally possess with the intent to distribute 98.8 grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), 21.5 grams of cocaine powder, both Schedule II controlled substances, and 396 pills of MDMA.
>> b) On January 17, 2007, the defendant and Marion Russell were stopped for speeding in Unicoi County, Tennessee by a trooper with Tennessee Highway Patrol. A K-9 alerted on the exterior and the interior of the car.
>> c) The vehicle was a rental car which the defendant had driven from Atlanta, Georgia to Johnson City, Tennessee.
>> d) During a search of the vehicle 98.8 grams of cocaine base ("crack"), 21.5 grams of cocaine powder, and 396 MDMA (Ecstasy) pills were found concealed in the headliner of the car. Also in the vehicle, agents found approximately $1,913.00 in U.S. currency.
>> e) The defendant admits that he and Russell, aiding and abetting each other, possessed the cocaine base ("crack") and MDMA with the intent to further distribute it. The defendant further admits that he also possessed the cocaine powder.

[Doc. 126 at ¶ 3].

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in

4

the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### III. Analysis and Discussion

Petitioner raises two broad claims in his § 2255 motion. First, he contends that counsel rendered ineffective assistance during his resentencing. Second, Freeman contends that he is eligible for a reduction in his sentence based on the Fair Sentencing Act and the retroactive Amendment 750 to the United States Sentencing Guidelines for crack cocaine offenses. The Court will deal with the issue related to Amendment 750 first.

### A. Amendment 750 and the Fair Sentencing Act

7

Within months of the entry of the judgment in Freeman's case on September 2, 2011, he filed his *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the Fair Sentencing Act and retroactive Amendment 750 to the United States Sentencing Guidelines, which lowered the base offense levels for offenses involving cocaine base or crack cocaine, [Doc. 129]. A subsequent "Expedited Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)" was filed on Freeman's behalf by Federal Defender Services of Eastern Tennessee, Inc., [Doc. 133]. The government responded to the motions and, as set forth above, the motions were denied by order entered on November 21, 2011. On December 8, Freeman filed an appeal of the Court's November 21 order.

While the appeal was pending, Freeman filed the instant § 2255 motion, raising the same issue which was the subject of his appeal. On October 19, 2012, the Sixth Circuit Court of Appeals affirmed the denial of Freeman's motion, holding that Amendment 750 did not lower Freeman's base offense level or his guidelines range because the 2010 version of the Guidelines which was relied on in calculating Freeman's guidelines range incorporated all amendments which took effect on November 1, 2010, including Amendment 748, the temporary, emergency revision to the Guidelines later re-promulgated as permanent in Amendment 750. In other words, Freeman received full benefit of Amendment 750 when his guidelines range was calculated. The Sixth Circuit's ruling is dispositive on this claim and the claim lacks merit.

    **B.    Ineffective Assistance of Counsel**

Petitioner's motion is somewhat rambling and makes it difficult to discern the exact instances of ineffective assistance of counsel of which he complains. As best the Court can tell, however, he makes the following claims of ineffective assistance: (1) counsel "induced and convinced" petitioner to plead guilty rather than go to trial a second time; (2) counsel failed to

investigate the facts of the case; (3) counsel failed to adequately explain the consequences of the Rule 11(c)(1)(C) plea agreement; and (4) "counsel allowed defendant to plead guilty to all counts instead of asking the government to dismiss Counts Two and Three in exchange for the guilty plea."

Freeman poses the question, "Why would any attorney allow their client who received a 120 month sentence after being found guilty by a jury trial to enter into a 108 month agreed upon sentence under 11(c)(1)(C), which is just one year shorter [sic] of the original sentence and the defendant gave up several of his rights, and received nothing for acceptance of responsibility." A competent attorney, he argues, would have sought a shorter sentence. Based on Freeman's somewhat rambling motion, it is difficult to discern the precise parameters of these claims. His claim, however, seems to revolve around two primary contentions—first, that counsel erroneously informed him that once Amendment 750 became effective, he would be eligible for a sentence reduction, and, second, that he should have received a three-level reduction for acceptance of responsibility "<u>AFTER</u> the agreed sentence was selected." The Court will take these issues up in turn.

    1.    **Voluntariness of Guilty Plea**

Freeman claims he was "induced and convinced" to plead guilty pursuant to a Rule 11(c)(1)(C) plea agreement rather than go to trial a second time. This Court specifically found, however, after the Rule 11 colloquy, that Freeman had "offered to plead guilty knowingly and voluntarily." Freeman now appears to argue that his guilty pleas were not voluntary because he was "induced and coerced" by counsel to forego a second trial and plead guilty.

To be valid, a guilty plea must be made voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The plea must be made with knowledge of the "relevant

9

circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant need only be aware of the direct consequences of the plea; however, the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea. *Brown v. Perini*, 718 F.2d 784, 788-89 (6th Cir. 1983). Determining whether a plea was made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea. *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984); *Brown*, 718 F.2d at 786. The "ultimate question" is if the plea was in fact voluntary and intelligent. *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir. 1985).

Although the procedure for accepting guilty pleas under Federal Rule of Criminal Procedure 11 is not constitutionally mandated, the procedure is designed to assist the trial judge in making the determination that a guilty plea is voluntary. *McCarthy v. United States*, 394 U.S. 459, 465 (1969). Rule 11 ensures that a defendant pleading guilty understands his constitutional rights and that his plea of guilty is voluntary. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). The record in this case clearly establishes that the Court carefully reviewed with Freeman the rights he was waiving, determined that he understood these rights, including his right to a second trial, that he understood the nature and meaning of the charges and the maximum sentences he faced, and that he was satisfied with counsel's representation of him. In other words, the record establishes that the Court scrupulously follow the requirements of Rule 11 and that Freeman's plea was voluntary and free of any inducement or coercion by counsel.

Furthermore, Freeman confirmed under oath that the decision to plead guilty was voluntary and not the product of coercion or inducement. He testified:

> Q. HAS ANY PERSON, INCLUDING AN OFFICER OR AGENT OF THE GOVERNMENT, PUT ANY PRESSURE ON YOU MENTALLY OR PHYSICALLY TO FORCE YOU TO PLEAD GUILTY IN THIS CASE?

10

> A. NO, SIR.
>
> Q. MR. FREEMAN, I AM AWARE THAT THE GOVERNMENT HAS MADE CERTAIN PROMISES TO YOU IN THIS PLEA AGREEMENT; BUT ASIDE FROM THE PROMISES CONTAINED IN THIS PLEA AGREEMENT, HAS ANY OFFICER OR AGENT OF THE GOVERNMENT PROMISED YOU OR SUGGESTED TO YOU THAT YOU WILL RECEIVE A LIGHTER SENTENCE OR ANY OTHER FORM OF LENIENCY IF YOU PLEAD GUILTY?
>
> A. NO, SIR.
>
> Q. ONCE AGAIN, ASIDE FROM THE PROMISES CONTAINED IN THIS PLEA AGREEMENT, HAVE ANY PROMISES OR THREATS OF ANY KIND BEEN MADE BY ANYONE TO INDUCE YOU TO PLEAD GUILTY IN THIS CASE?
>
> A. NO, SIR.

[Doc. 144, p. 13, *l* 13-p. 14, *l* 3]. Freeman's claim that his guilty plea was induced or coerced by counsel and thus involuntary is without merit and contradicted clearly by the record.

    **2.    Failure to Investigate**

Once again, Freeman's claim of failure by counsel to properly investigate the case is hard to discern. One thing is clear, however. He does not claim that counsel was unfamiliar with the facts of the case because of lack of investigation or that she failed to call witnesses favorable to him or present other exculpatory evidence. Rather, the sum total of his claim appears to be that counsel rendered ineffective assistance of counsel because of her advice that if he went to trial a second time, his co-defendant would testify against him and he would likely be found guilty. He also claims his attorney told him the government would file a § 851 information based on his prior felony drug conviction, making him subject to the mandatory

minimum ten year sentence if convicted.[2] As a result, he says, he entered into a plea agreement "that was totally in favor of the government."

Freeman makes no attempt to show that counsel's advice was objectively erroneous or improper. Indeed, it was not. As a result of counsel's knowledge of the case, it would likely have been ineffective assistance if she had failed to advise him that he was likely to be convicted at a trial based on the testimony of his co-defendant and be sentenced once again to at least a ten year mandatory minimum sentence.[3] Freeman's argument that his attorney should have negotiated an even shorter sentence and that the plea was "totally in favor of the government" is almost illogical under these circumstances and conveniently overlooks the obvious benefit to Freeman of a plea to the lesser included offense charged in Count 1 which allowed him to escape the likely application of the mandatory minimum of ten years and the risk of the possibility of an even greater sentence after a trial. This claim is without merit.

### 3. Failure to Explain the Consequences of the Plea Agreement

As best the Court can tell, petitioner claims that counsel failed to explain the consequences of the plea agreement in two ways: First, that he would not be given any reduction in his sentence for acceptance of responsibility and, second, that he would be eligible for a sentence reduction once guidelines "amendment 705 became law on November 1, 2010." In essence, Freeman argues that somehow, because of counsel's advice, he believed his sentence would ultimately be less than the 108 months agreed upon in the plea agreement.

These claims are clearly contradicted by the record. If the Court accepts a plea agreement made pursuant to Rule 11(c)(1)(C) in which the parties "agree that a specific sentence . . . is the appropriate disposition of the case," the Court is bound to impose the agreed upon

---

[2] Freeman does not argue that these statements by his attorney were false.
[3] Absent the plea agreement, there was certainly no guarantee that Freeman would not have been sentenced to a sentence even greater than 120 months after a second trial.

12

sentence. Fed. R. Crim. P.11(c)(1)(C). Under Rule 11, the Court is required to "inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1) . . . (C), the agreed disposition will be included in the judgment." Fed. R. Crim. P. 11(c)(4). That is precisely what the Court did here.

A review of the transcript of the change of plea and sentencing hearing on January 24, 2011, confirms Freeman's understanding of his plea agreement.

> Q. . . . YOU HAVE ENTERED INTO AN 11(C)(1)(C) PLEA AGREEMENT IN THIS CASE. THAT PLEA AGREEMENT CONTAINS AN AGREEMENT BETWEEN YOU AND THE GOVERNMENT AS TO THE SENTENCE IN THIS CASE. DO YOU UNDERSTAND THAT YOU HAVE AGREED IN THIS PLEA AGREEMENT TO A SENTENCE OF 108 MONTHS IN THIS CASE?
>
> A. YES SIR
>
> Q. DO YOU UNDERSTAND THAT IF I ACCEPT THIS AMENDED PLEA AGREEMENT, THAT IS THE SENTENCE THAT WILL BE IMPOSED BY THE COURT?
>
> A. YES SIR.[4]

[Doc. 144 at 19]. This agreed disposition was also clearly set out in the amended plea agreement, [Doc. 126 at ¶ 5], and Freeman affirmed, under oath, that he had both read and understood the plea agreement. Also, as noted above, Freeman testified that no promises, except for those in the plea agreement, had been made by anyone, including counsel, to induce him to plead guilty.

Furthermore, Freeman's argument is based on the faulty assumption that he was eligible for a three-level reduction in his guidelines range for acceptance of responsibility. Section 3E1.1(a) provides for a two-level decrease in the offense level if the defendant clearly

---

[4] Despite this clear exchange between the Court and petitioner, Freeman maintains that he did not understand that the "108 months sentence was a fix [sic] sentence." [Doc. 154 at 2].

13

demonstrates acceptance of responsibility for his offense and § 3E1.1(b) provides for an additional level decrease upon motion of the government. "Entry of a guilty plea prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will generally constitute significance of acceptance of responsibility . . ." USSG § 3E1.1, comment. n.3. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.*, n.2.

Here, petitioner put the government to its burden of proof at trial by denying the essential factual elements of guilt. It was only after his successful appeal and remand for a new trial that defendant entered his guilty plea. This is not one of the "rare situations" where the adjustment would apply even though petitioner maintained his factual innocence and went to trial. *See id*. Petitioner was not preserving issues that were unrelated to factual guilt, such as a constitutional challenge or a challenge of the applicability of the statute to his conduct. Since Freeman was not entitled to the adjustment, counsel cannot be ineffective for failing to raise the issue. *See, e.g., Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Mapes v. Coyle*, 171 F.3d 400, 413 (6th Cir. 1999).

### 4. Petitioner's Plea of Guilty to all Counts of the Indictment

In petitioner's plea agreement, he agreed to plead guilty of lesser included offenses charged in all three counts of the indictment and he subsequently did so. Freeman's complete argument on this claim is contained in one sentence: "Counsel allowed defendant to plead guilty to all of the counts instead of asking the government to dismiss Counts Two and Three in exchange for the guilty plea of the defendant." This claim fails for several reasons. First, it is conclusory. Second, criminal defendants have "no constitutional right to plea

14

bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), and the government is not required to accept the terms sought by defendant. Third, petitioner's claim that counsel "allowed" him to plead guilty to all counts suggests that the decision was for counsel to make. It was not. As set forth above, the record in the case clearly establishes that Freeman's decision to plead guilty to all counts of the indictment was voluntarily and knowingly made. As the government notes, "[t]he decision to plead guilty--first, last, and always—rests with the defendant, not his lawyer." [Doc. 7 (quoting *Smith v. United States*, 348 F.3d 345, 552 (6th Cir. 2003))]. Finally, and most importantly, Freeman testified under oath that he was "offering to plead guilty to each of those offenses because [he was] in fact guilty of those offenses." [Doc. 144 at 18]. There is no ineffective assistance of counsel related to this claim.

## IV. Conclusion

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Id.

15

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal of her claims was debatable or wrong. Therefore, the Court will DENY a certificate of appealibility.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE